```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

CANDICE MARY NIEDBALSKI,

                      Plaintiff,                       **Hon. Hugh B. Scott**

                         v.                             **18CV584**

                                                                **CONSENT**

ANDREW SAUL, COMMISSIONER,             **Order**

                      Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 14 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (see Docket No. 16, reassignment Order).

## PROCEDURAL BACKGROUND

The plaintiff ("Candice Niedbalski" or "plaintiff") filed an application for disability insurance benefits on August 17, 2011, for disability and August 24, 2011, for SSI benefits [R. 669]. That application was denied initially. The plaintiff appeared before an

Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated June 26, 2013, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 14, 759, 669]. The ALJ then found that plaintiff could resume her past relevant work as a financial administrator and that she could perform light work except she could not perform any overhead lifting [R. 25, 770, 28, 763, 669]. On January 13, 2015, the Appeals Council found no reason to overturn this decision [R. 1, 776, 669]. Plaintiff then sought judicial review, Niedbalski v. Colvin, No. 15CV220, and the parties later entered into a Stipulation for remand to the agency, id., Docket No. 13 (Oct. 19, 2015), so ordered, id., Docket No. 14 (Oct. 20, 2015) [R. 815, 817-19, 822-24, 669].

On December 14, 2015, the Appeals Council vacated the unfavorable decision and remanded in accordance with the Order of this Court [R. 825-30, 669]. On remand, the ALJ was to complete the administrative record, evaluate the severity of plaintiff's hearing impairment, reconsider plaintiff's maximum residual functional capacity, determine whether plaintiff can perform the physical and mental demands of her past relevant work, and provide plaintiff the opportunity for a hearing [R. 669-70]. On March 6, 2018, the ALJ again found that plaintiff was not disabled, although she could not return to her past relevant work [R. 687, 689].

The ALJ's decision became the final decision of the Commissioner on April 3, 2017, upon that remanded decision.

Plaintiff commenced this action on May 21, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 14), and plaintiff duly replied (Docket No. 15). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 38-year-old as of the onset date and 48 years old at the start of the second administrative hearing with a high school education, last worked as an office clerk [R. 687, 185] (Docket No. 12, Pl. Memo. at 4). She contends that she was disabled as of the onset date of June 1, 2008 [R. 673]. Plaintiff engaged in work after June 2008, but the ALJ deemed that work was not substantial gainful activity [R. 673].

Plaintiff claims the following impairments deemed severe by the ALJ: lumbar and degenerative disc disease; hearing loss; depression; and panic disorder [R. 673].

**MEDICAL AND VOCATIONAL EVIDENCE**

The ALJ found that plaintiff's impairments did not meet or equal Listings for cervical and lumbar spine disorders, Listing 1.03, 1.04A, C, for hearing loss (Listing 2.08, 2.10), or mental impairments (Listings 12.04, 12.06, or 12.15) [R. 675-77].

As for plaintiff's mental condition, the ALJ considered "Paragraph B" criteria for meeting Listing 12.04 [R. 675-77], not finding one extreme or two marked limitations among the four criteria under that rule. As for understanding, remembering and applying information, the ALJ found that plaintiff had a mild limitation [R. 676]. As for interacting with others, the ALJ found that plaintiff had a moderate limitation [R. 676]. As for concentrating, persisting, or maintaining pace, the ALJ found plaintiff had moderate limitations [R. 676-77]. And as for adapting or managing oneself, the ALJ found that plaintiff had a mild limitation [R. 677]

The ALJ found that plaintiff had a residual functional capacity to perform light work except which is limited to simple, repetitive one and two-step tasks and no more than occasional

social contact and plaintiff should not be required to hear alarms or alerts required to work functions or safety [R. 678].

The ALJ found that plaintiff was unable to perform past relevant work as an office clerk since the vocational expert opined that her past work was semi-skilled and exceeds the residual functional capacity restriction to one and two-step tasks [R. 687, 923]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such light and unskilled occupations as small products assembler, injection molder, and electronics system assembler [R. 688, 924]. As a result, the ALJ held that plaintiff was not disabled from the onset date of June 1, 2008, to the date of the second decision, March 6, 2018 [R. 689].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.   Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

4

has lasted or can be expected to last for a continuous period of not less than 12 months."
42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

5

20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

  II.  Treating Physician Standard, Pre-March 2017 Claims

Plaintiff's August 2011 claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one. The current version of the SSA regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claim filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31,

6

2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. First, plaintiff argues that the ALJ erred in not including limitations to changing location or task no more than one time in the residual functional capacity and subsequent interrogatories posed to the vocational expert based upon that capacity (Docket No. 12, Pl. Memo. at 14-21). The ALJ relied upon the opinion of psychological expert Dr. Cheryl Len, Ph.D. [R. 670, 714-20[1], 1030], finding that Dr. Len's testimony was consistent with the overall evidence and that the new and material evidence from remand supported the doctor's assessment [R. 670, 686] (Docket No. 12, Pl. Memo. at 14-15, 13). Dr. Len testified that plaintiff had a diagnosis for depressive, bipolar and other disorders,

---

[1] The transcript refers to "Dr. Lim," e.g., R. 698.

but that plaintiff did not meet Listing 12.04 [R. 716]. In discussing "Paragraph B" criteria, the ALJ asked whether plaintiff was able to do simple, repetitive tasks, that is one- or two-step tasks in a low social contact environment and Dr. Len said that plaintiff "definitely" could perform [R. 720]. The ALJ continued the question and asked if plaintiff could perform more than one change in the type or location of work during the day and Dr. Len concurred [R. 720]. The ALJ gave this opinion great weight from an impartial expert who consistently testified with the evidence and supported that record with appropriate findings [R. 686].

Second, plaintiff contends that the ALJ erred in not affording weight to the opinion of Dr. Michael Calabrese, plaintiff's treating physician, who found in 2012 that plaintiff was unable to sit, stand, or walk for prolonged periods due to back and neck injuries (Docket No. 12, Pl. Memo. at 5, 19-21) [R. 661]. The ALJ gave no weight to Dr. Calabrese's August 27, 2012, findings [R. 686].

I. Selective Reading Dr. Len's Opinion

Plaintiff objects to the ALJ's selective reliance on Dr. Len's opinion by not incorporating the limitation on plaintiff changing location or type of work in posing the hypothetical to the vocational expert (Docket No. 12, Pl. Memo. at 14-15). This limitation that plaintiff could not do more than one change in the type or location of work during the day was not included in the residual functional capacity [cf. R. 678] and thus the ALJ failed to explain the limitation on changing position or task (id. at 16).

Defendant counters that consultative examiner Dr. Susan Santarpia, Ph.D., had examined plaintiff and did not find any limit in plaintiff's ability to change locations and type of work (Docket No. 14, Def. Memo. at 23; [R. 543, 686]). Non-examining review physician, Dr. D.

Mangold, also noted that plaintiff had no record of treatment for mental health issues (Docket No. 14, Def. Memo. at 23; [R. 568]) and opined that plaintiff had no more than mild functional limitations due to her mental condition (Docket No. 14, Def. Memo. at 23; [R. 566]). Defendant concludes that these two doctors did not find any limitation in plaintiff's ability to perform more than one task at one location (Docket No. 14, Def. Memo. at 24). Two of the occupations identified by the vocational expert (injection molder and electronics system assembler) do not have requirements regarding changing work stations or changes in work to be done (id. at 24-25). Defendant concludes that substantial evidence of record supports the ALJ's consideration of that limitation (id. at 24). Defendant alternatively argues that this omission was harmless, and plaintiff has the burden to show that the error was harmful (id. at 25).

In her Reply, plaintiff concludes that the ALJ had to include the limitation given from a doctor given "great weight" or explain why it was not included (Docket No. 15, Pl. Reply Memo. at 1).

The so-called change in location and work type limitation needs explanation. Dr. Len reviewed the "Paragraph A" criteria [R. 717-20] and regarding concentration, persistence, and maintain pace, the doctor found that plaintiff had moderate limitation [R. 718]. Dr. Len noted that level of limitation due to plaintiff's pain limitations which she assumed were ongoing [R. 718]. When informed by the ALJ that an orthopedist testified that there were no organic severe impairments, Dr. Len changed her assessment regarding concentration, persistence or pace to "mild or none" based on plaintiff's reported pain [R. 719]. Dr. Len concluded that none of these criteria were marked or severe [R. 719]. In examining Dr. Len, the ALJ next discussed (and then discounted) "Paragraph B" criteria [R. 717, 720]. The ALJ asked the doctor whether

9

someone could perform simple, one- to two-step tasks in a low social contact environment "and not have to do more than one change in the type or location of work during the day," [R. 720] and the doctor agreed [R. 720]. Change location and work type does not appear anywhere else in the record and appears here from the ALJ's question identifying possible "Paragraph B" criteria.

Plaintiff complains that the ALJ did not pose this limitation to the vocational expert. During the April 3, 2017, hearing, the ALJ did pose to the vocational expert a hypothetical claimant (in relevant conditions) that had plaintiff's "vocational profile, assume that person has no exertional limitations. That person can do simple one- and two-repetitive-step process; should not be changing more than one time a day the location or task" [R. 745] (see Docket Nos. 12, Pl. Memo. at 13, 14, Def. Memo. at 18). The vocational expert then opined that such a hypothetical person could work as a packaging machine operator or a hand packer [R. 745-56].

Upon remand, on October 23, 2017, the ALJ posed written interrogatories to the vocational expert [R. 921-25] but the description of the hypothetical claimant omitted the limitation for change in location or tasks [R. 923]. The expert responded that the newly described hypothetical claimant could work as injection molder, electronics systems assembler (two occupations that do not have change in location or tasks) or small products assembler [R. 924] (see Docket No. 14, Def. Memo. at 24-25).

This limitation arose in discussing plaintiff's mental health. It appears that the limitation on plaintiff's ability to change locations or tasks came from the ALJ's questioning of Dr. Len which followed Dr. Len accepting some form of limitation due to plaintiff's pain. The omission from the on remand subsequent written interrogatory to the vocational expert of one line

10

regarding changes in location or tasks was **harmless error** and plaintiff has not shown how this omission was harmful to her claim. Plaintiff's motion for judgment on this ground (Docket No. 12) is **denied**.

II.     Weight for Dr. Calabrese's Physical Opinion

The ALJ gave no weight to Dr. Calabrese's August 27, 2012, finding [R. 661] that plaintiff could not stand, sit, or walk for prolonged periods of time due to multiple back and neck injures [R. 686]. Dr. Calabrese rendered this opinion in a note for plaintiff to be excused from jury duty [R. 661] (see Docket No. 14 Def. Memo. at 25-26). The ALJ instead relied upon impartial medical expert Dr. John Kwock's[2] findings that plaintiff's physical impairments improved over time since 2012 and Dr. Kwock had reviewed a complete record unlike Dr. Calabrese [R. 1315 (only change in Dr. Kwock's opinion is that plaintiff can perform light work), 686].

Plaintiff correctly argues that a treating physician's opinion is entitled to controlling weight <u>if supported by medical findings and is not inconsistent with other substantial evidence</u> (Docket No. 12, Pl. Memo. at 18), 20 C.F.R. § 404.1527(c)(2) (emphasis added) but only if supported by medical findings and the record (see Docket No. 14, Def. Memo. at 25). Plaintiff argues that she had been seen by Dr. Calabrese's practice since September 28, 2011, and was seen fourteen times before the August 2012 letter (Docket No. 12, Pl. Memo. at 19; [R. 554-55, 631]). After that date, plaintiff points out a November 11, 2012, examination that found severe neck symptoms (id.; [R. 322]).

---

[2]This is the spelling of the doctor's name, R. 942, 1293, 1315, 686; Docket No. 12, Pl. Memo. at 19. The transcript spelled his last name "Kwak," R. 701; Docket No. 14, Def. Memo. at 17 n.6, while the parties in their memoranda (Docket No. 12, Pl. Memo. at 13; Docket No. 14, Def. Memo. at 17) spelled it "Kwok."

11

This Court must "defer to the Commissioner's resolution of conflicting evidence," Morris v. Berryhill, 721 F. App'x 25, 29 (2d Cir. 2018) (Docket No. 14, Def. Memo. at 25); Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). This Court reviewed the medical record for cervical and lumbar herniation since August 27, 2012, the conditions Dr. Calabrese noted in seeking to excuse plaintiff from jury duty. That record does not indicate limitations beyond light work standards. The ALJ did not err in relying on Dr. Kwock's findings upon his review of the updated medical record.

Thus, plaintiff's motion (Docket No. 12) for judgment on this ground is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 12) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 14) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 19, 2019